UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: )<br>)<br>CONTINENTALAFA DISPENSING COMPANY,)<br>)<br>)<br>)<br>Debtor. )<br>)<br>JOSHUA BRIDGES on behalf of himself and )<br>all others similarlysituated, )<br>)<br>Plaintiff, )<br>)<br>-v- )<br>)<br>CONTINENTALAFA DISPENSING COMPANY,)<br>et al. )<br>)<br>Defendants. ) | Case No. 08-45921-659<br>Judge Kathy A. Surratt-States<br>Chapter 11<br><br><br><br>**Adversary No. 08-4154-659**<br><br><br>**PUBLISHED** |

# O R D E R

The matters before the Court are Defendants Harbinger Capital Partners Master Fund I, Ltd. and Harbinger Capital Partners Special Situations Fund, L.P.'s Motion to (I) Dismiss Complaint and (II) Extend the Automatic Stay (hereinafter "Defendants' Motion"), Defendants Harbinger Capital Partners Master Fund I, Ltd. and Harbinger Capital Partners Special Situations Fund, L.P.'s Memorandum of Law in Support of (I) Dismiss Complaint and (II) Extend the Automatic Stay (hereinafter "Defendants' Memorandum"), Motion of Debtors, ContinentalAFA Dispensing Company, AFA Products, Inc. and Continental Sprayers International, Inc., to Dismiss Complaint (hereinafter "Debtors' Motion"), Plaintiff's Opposition to Debtors' ContinentalAFA Dispensing Company, AFA Products, Inc. and Continental Sprayers International, Inc., Motion to Dismiss Adversary Proceeding Pursuant to Federal Rule of Civil Procedure 12(b)(6) (hereinafter "Plaintiff's Opposition to Debtors' Motion"), Plaintiff's Opposition to Defendants Harbinger Capital Partners Master Fund I, Ltd. and Harbinger Capital Partners Special Situations Fund, L.P.'s Motion to (I)

Dismiss Complaint and (II) Extend the Automatic Stay (hereinafter "Plaintiff's Opposition to Defendants' Motion"), Joinder of the Official Committee of Unsecured Creditors to the Motions to Dismiss Filed by Debtors, Harbinger Capital Partners Master Fund I, Ltd. and Harbinger Capital Partners Special Situations Fund, L.P. (hereinafter "Committee's Joinder"), Defendants Harbinger Capital Partners Master Fund I, Ltd. and Harbinger Capital Partners Special Situations Fund, L.P.'s Reply in Support of Motion to (I) Dismiss Complaint and (II) Extend the Automatic Stay (hereinafter "Defendants' Reply"), and Reply of Debtors, Continental AFA Dispensing Company, AFA Products, Inc. and Continental Sprayers International, Inc., in Support of Their Motion to Dismiss Complaint (hereinafter "Debtors' Reply").  Defendants' and Debtors' Motions to Dismiss were set for hearing on November 19, 2008.  All parties appeared by counsel and presented oral argument.  The matters were then taken as submitted by the Court.  Upon consideration of the record as a whole, the Court issues the following FINDINGS OF FACT:

ContinentalAFA Dispensing Company (hereinafter "CAFA") is wholly owned by Harbinger Capital Partners Master Fund I, Ltd. and Harbinger Capital Partners Special Situations Fund, L.P. (hereinafter collectively "Harbinger" or "Defendants").  Defendants' Memorandum, p. 2, ¶ 2.  CAFA along with its affiliates, AFA Products, Inc. (hereinafter "AFA") and Continental Sprayers International, Inc. (hereinafter "CSI") (and hereinafter collectively "Debtors"), are the Debtors in this matter.  CAFA owns all of the common stock of the other Debtors, AFA and CSI.  Defendants' Memorandum p., ¶ 2.  Also, Harbinger is a secured creditor with a second lien on substantially all of Debtors' assets.  Defendants' Memorandum, p. 2, ¶ 2.  Debtors designed, manufactured, and supplied plastic trigger sprayers and other liquid dispensing products to major consumer companies and industrial markets.  Debtors' Motion, p. 2.  Debtors' headquarters was located in St. Peters Missouri.  Debtors' Motion, p. 3.  Additionally, Debtors operated manufacturing and assembly facilities in St. Peters, Missouri, Forest City, North Carolina, and Bridgeport, Connecticut.  Debtors'

Motion, p. 3.  Likewise, Debtors operated facilities in Juarez, Mexico and Cartago, Costa Rica until their closure in June and July 2008.  Primarily, these locations produced injection molding and high-speed assembly of components into pumps and sprayers.  Debtors' Motion, p. 3.

Debtors retained Jeffries & Company, Inc. (hereinafter "Jeffries"), a financial advisor, in early 2008, after experiencing severe financial distress due to increasing costs of raw materials, outdated equipment and other issues.  Debtors' Motion, p. 3.  Debtors along with Jeffries decided that selling the company was the only viable option while continuing to seek additional capital and/or refinancing.  Debtors' Motion, p. 3.  In addition, Debtors and Jeffries contacted potential investors and purchasers.  Debtors' Motion, p. 3.  After attempting to restructure by seeking additional loans from shareholders, Debtors realized that continuing business operations was no longer feasible.  Debtors' Motion, p. 3.

In late July 2008, Debtors terminated the majority of their 743 employees.  Debtors' Motion, p. 3.  On August 7, 2008, Debtors filed their Chapter 11 bankruptcy petitions.  Debtors' Motion, p. 2.  During the first hearing held on August 8, 2008, Debtors advised the Court that due to the recent termination of sale discussions, Debtors had no alternative than to cease operations and begin liquidating assets.  Defendants' Memorandum, p. 2, ¶ 3; Debtors' Motion, p. 3.  Debtors ceased mostly all operations and have been winding down their businesses, utilizing 20 employees.  Debtors' Motion, p. 2.  Debtors retained one member of their management team to oversee the liquidation of assets.  Debtors' Motion, p. 2.

Plaintiff Joshua Bridges (hereinafter "Plaintiff") filed Class Action Adversary Proceeding Complaint (hereinafter "Complaint") on August 11, 2008, on behalf of himself and a class of similarly situated former employees of Debtors seeking damages under the Worker Adjustment and Retraining Notification Act (hereinafter the "WARN Act") for termination of employment without 60-days advance written notice by Debtors.  Plaintiff's Complaint, p. 1-2, ¶ 1;  Debtors' Motion, p. 4;

Defendants' Motion, p. 2, ¶ 4. Plaintiff seeks to recover 60 days of wages and benefits. Plaintiff's Complaint, p. 2, ¶ 2.

Defendants argue that this Court lacks jurisdiction over pre-petition WARN Act claims, especially where a non-debtor, such as Defendants, are co-defendants. Defendants further argue that this Court does not have the power to conduct a judicial proceeding to award back pay[1] pursuant to the WARN Act. Defendants assert that the Bankruptcy Code does not grant an employee that is terminated pre-petition an administrative expense claim for back pay under the WARN Act. Defendants also contend that Plaintiff provided no post-petition services to Debtors, so an administrative expense is not proper.

Debtors argue that Plaintiff's Complaint should be dismissed because it duplicates the existing claims process established by the Bankruptcy Court and wastes judicial resources and limited resources of Debtors' estates. Debtors assert that Plaintiff is prohibited from pursuing allowance of his claims through an adversary proceeding in that an adversary proceeding should be used where equitable relief is sought and not a money judgment. Debtors dispute the claim that it violated the WARN Act. Debtors claim that its actions fall under an exception to the requirement of 60 days notice of a plant closing to employees and argue that due to its continued efforts to seek capital, the closing was due to unforeseeable business circumstances. Debtors argue that Plaintiff's claims are not entitled to a first priority administrative expense claim in that Plaintiff's claims are for alleged pre-petition wages. Debtors further asserted that Plaintiff's attorneys' fees are not entitled to administrative expense status.

Debtors and Defendants both argue that the filing of the Complaint by Plaintiff violates the automatic stay. Debtors and Defendants both go on to argue that the automatic stay should be extended to Defendants because under the circumstances of Defendants being CAFA's only

---

[1] Back pay is accrued but uncollected wages or benefits *BLACK'S LAW DICTIONARY, 133 (7th ed. 1999)*

-4-

shareholder, Debtors would still be involved in this litigation if the action were allowed to continue against Defendants.

Plaintiff argues that Plaintiff is entitled to back pay because Plaintiff did not receive a 60-day notice pursuant to the WARN Act, before Plaintiff's employment was terminated due to the plant closing. Plaintiff argues that a class action is the proper vehicle and a superior method for the fair and efficient adjudication of this matter. Plaintiff asserts that where class members lack the financial resources to vigorously prosecute a lawsuit in federal court in a WARN Act litigation, class action is appropriate. Plaintiff further argues that the Bankruptcy Code permits adversary proceedings to secure equitable relief. Plaintiff asserts that the Complaint is not duplicative of the claims process and has not been brought for an improper purpose. Plaintiff contends that the class action Adversary Proceeding provides a more economical means to resolve WARN Act Claims. Plaintiff argues that both the WARN Act Claims and Plaintiff's attorneys fees are entitled to first priority administrative expense claim status. Therefore, Plaintiff requests that Defendants' and Debtors' Motions be denied.

## JURISDICTION AND VENUE

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334 (2008) and Local Rule 81-9.01 (B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b) (2) (A), (B), (G), and (O) (2008). Venue is proper in this District under 28 U.S.C. § 1409(a) (2008).

## CONCLUSIONS OF LAW

The main issue is whether an employee terminated pre-petition by a debtor can be granted an administrative expense claim for back pay under the WARN Act. Pursuant to 29 U.S.C. § 2102(a), employers must give affected workers 60 days written notice of a plant closing or mass layoff. 29 U.S.C. § 2102(a) (2008). Any employer who orders a plant closing or mass layoff in

violation of § 2102 is liable to employees for back pay for each day of violation. 29 U.S.C. § 2104(a)(1)(A) (2008).

The WARN Act was intended to provide workers and their families the chance to adjust to their impending loss of income. *In re First Magnus Fin. Corp., 390 B.R. 667 (Bankr. D. Ariz. 2008)* (holding that allowing pre-petition WARN Act claims to receive administrative expense status would be inconsistent with the plain meaning of § 503(b)(1)(A)). The WARN Act provides for the readjustment and retraining of displaced workers. *Id. at 672*. In essence, the WARN Act is a statutory form of severance pay. *Id.* Here, Debtors admit that employees were laid off without 60 days notice. Debtors assert that the layoff without notice was due to unforeseeable business circumstances. Notwithstanding Debtors' assertion of a defense, an employee's claim for back pay may only be granted to employees terminated after a bankruptcy filing. *In re Palau Corp., 18 F.3d 746 (9th Cir. 1993).* Pursuant to 11 U.S.C. § 503(b)(1)(A), administrative expense status may be given only to the post-petition portion of the claim. 11 U.S.C. § 503 (b)(1)(A) (2008).

Wage claims qualify for administrative status only if service was rendered to the estate post-petition. *Palau, 18 F.3d at 750-51*. Under the Bankruptcy Code, Congress intended for certain types of claims to have priority over all others. Preference is given to some claims because it is unlikely that all creditors will be paid in full. *First Magnus, 390 B.R. at 673*. Expenses which are "actual, necessary costs and expenses of preserving the estate" are entitled to administrative claim status and as such are given top priority for payment ahead of other priority claims. 11 U.S.C. § 507(a)(1)(C) and (2); *Id. at 673*.

"The theory behind this 'super-priority' treatment for administrative expenses is that the services rendered to a debtor, which help preserve the value of the estate, whether for continuation of the business or immediate liquidation, benefit all of the pre-petition creditor body." *Id.* Plaintiff must show that his claim arose from post-petition transactions with or for services to Debtors.

Furthermore, Plaintiff must show that his claim provided a direct and substantial benefit to the Debtors' estate. *Id. at 674.*

"[A] WARN Act claim, for an employee terminated pre-petition, can never be an actual and necessary expense of preserving an *estate*." *Id.* at 679 (emphasis original). The rationale is that "the claim did not originate post-petition, and the employee did nothing to preserve the bankruptcy estate." *Id*. Here, Plaintiff was terminated before Debtors filed their petitions and therefore, Plaintiff performed no work after the petitions were filed. Thus, Plaintiff has a pre-petition claim. The revision of § 503(b) was not meant to slant the law totally in favor of terminated employees nor confer additional power to the bankruptcy court regarding the WARN Act. *Id*. Therefore, Plaintiff's claim does not qualify for administrative status.

The next issue is whether filing the Complaint violates the automatic stay. According to 11 U.S.C. § 362, the automatic stay prohibits judicial proceedings and enforcement of judgments against a debtor or property of the estate. 11 U.S.C. § 362 (a) (2008); *In re Veeco Inv. Co., L.P., 157 B.R. 452, 454 (Bankr. E.D. Mo. 1993)*. The automatic stay is a bar to all collection efforts against a debtor or debtor's property in an effort to determine creditor's rights and allow the orderly administration of a debtor's assets, free from creditor's interference. Debtors contended that the filing of Plaintiff's Complaint violates the automatic stay as an attempt to collect a pre-petition debt. Since Plaintiff's claims stem from pre-petition debts, Plaintiff's Complaint to collect on this pre-petition debt would in fact violate the automatic stay.

The automatic stay does not apply to actions against non-debtors. *Id. at 454*. However, here, Harbinger and Debtors correctly state that the automatic stay should be extended to Harbinger due to its close relationship to Debtors. The Court in *Veeco* articulated that the "unusual circumstances" exception applies to § 362. *Veeco* discusses the fact that this exception should be applied whenever the identity of the debtor is so entangled with a third-party defendant that

judgment against the third-party defendant will in effect be a judgment against the debtor. *Id.* at 454 (citing *A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986))*. Here, CAFA is wholly owned by Defendants. CAFA owns all of the common stock of the other Debtors, AFA and CSI. Additionally, Defendants are secured creditors with a second lien on substantially all of Debtors' assets. Thus, any action taken against Defendants will significantly affect Debtors who are protected under the automatic stay. Therefore, the filing of the Complaint is a violation of the automatic stay and the automatic stay should be extended to Defendants as to Plaintiff's claims against Defendants.

The final issue is whether Plaintiff's attorney's fees are entitled to administrative expense status. Plaintiff argues that both Plaintiff's WARN Act Claim and Plaintiff's attorney's fees are entitled to first priority administrative status. According to 29 U.S.C. § 2104(6), a plaintiff who prevails on his WARN Act claim may receive his attorney's fees at the court's discretion. 29 U.S.C. § 2104(6) (2008). Here, Plaintiff's claim does not qualify for administrative claim status. Plaintiff's attorney's fees are also not entitled to administrative expense status. Therefore,

**IT IS ORDERED THAT** Defendants Harbinger Capital Partners Master Fund I, Ltd. and Harbinger Capital Partners Special Situations Fund, L.P.'s Motion to (I) Dismiss Complaint and (II) Extend the Automatic Stay is GRANTED; and

**IT IS FURTHER ORDERED THAT** Motion of Debtors, ContinentalAFA Dispensing Company, AFA Products, Inc. and Continental Sprayers International, Inc., to Dismiss Complaint is GRANTED; and

**IT IS FURTHER ORDERED THAT** this Adversary Proceeding is DISMISSED.

*Kathy A. Surratt-States*

KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED: March 27, 2009
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Charles W. Riske
Attorney at Law
231 S. Bemiston, Suite 1220
St. Louis, MO 63105

Jack A. Raisner
Outten & Golden LLP
3 Park Ave
29th Floor
New York, NY 10016

Rene S. Roupinian
Outten & Golden LLP
3 Park Avenue
29th Floor
New York, NY 10016

ContinentalAFA Dispensing Company
27 Guenther
St. Peters, MO 63376

John J. Hall
Lewis, Rice et al.
500 N. Broadway, Ste. 2000
St. Louis, MO 63102

Josef S Glynias
Husch Blackwell Sanders LLP
720 Olive Street
Suite 2400
St. Louis, MO 63101

Marshall C. Turner
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

Robert J Tomaso
Husch Blackwell Sanders LLP
720 Olive Street, Suite 2400
St. Louis, MO 63101

Daniel D. Doyle
Spencer, Fane et al.
1 North Brentwood Blvd., #1000
St. Louis, MO 63105-3925

David Michael Brown
Spencer Fane Britt & Browne LLP
1 N Brentwood Blvd, 10th Fl
St. Louis, MO 63105